UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL CASE NO: 20-CR-144-DCR-MAS

UNITED STATES OF AMERICA                                   PLAINTIFF

v.

SUBHADARSHI NAYAK                                         DEFENDANT

## SENTENCING MEMORANDUM

Comes the Defendant, Subhadarshi Nayak, by counsel and respectfully submits the following as his sentencing memorandum. This memorandum is submitted pursuant to 18 U.S.C. § 3553(a), which directs the Court to consider the history and characteristics of the defendant and the nature and circumstances of the offense in order to fashion a sentence that is sufficient, but not greater than necessary to comply with the goals set forth in the statute.

Subhadarshi "Subu" Nayak was born and grew up in Cuttack, India, a city of approximately 660,000 people situated in eastern India.  Subu recalls the Cuttack of his youth as a hot but lushly green city where summertime temperatures could be 120 degrees Fahrenheit or greater.  He was the youngest of four children whose father worked as a newspaper reporter and whose mother was a homemaker. The daily newspaper where his father worked was printed with an antiquated printing press using manual typesetting.   Subu fondly remembers his father coming home each evening with a first printing of the newspaper that was still warm to the touch.  Parts of the paper would be handed out to each sibling and then those parts would be traded between the siblings as

they poured over the articles. Subu is sure that his lifelong fondness for reading is a direct result of this everyday ritual in their home.

When Subu was about eight years old, his father tragically suffered a stroke which permanently paralyzed the entire right side of his body. He was never able to work again and required significant assistance from Subu's mother.  He passed away when Subu was about 15.

The family fell into difficult financial circumstances following their father's stroke and death.  Out of necessity, his mother became very resourceful in obtaining food. She gathered mangoes and guava which grew in the vicinity of their home and she cultivated pumpkins and various greens. Subu remembers her foraging for an edible green called purslane, which grew near their home and was considered a weed.  Subu's mother assigned specific tasks to each of the children. Subu's assigned tasks centered mostly on helping in the kitchen and cooking for the family.  During this time, he developed a talent for cooking and preparing Indian cuisine is still one of his passions.

The family's financial difficulties affected all phases of their life. For instance, Subu had only one school uniform shirt and his school uniform pants were repaired hand-me-downs from his older brothers (most schools in India at the time required students to wear uniforms). Keeping his only uniform shirt clean was a challenge and he would often avoid the playground at recess in order to stay clean. His mother was not always able to afford other necessities, so she slowly sold off most of the family's possessions to generate some extra money.

A former colleague of Subu's father recognized the family's difficulties and referred the family to the "Save The Children" organization.  That organization began to give the family a quarterly stipend to use for education expenses. As they became old enough, Subu and his siblings were able to find jobs. Subu worked during the summers as a translator. Through the income that

the children were able to generate, and through the assistance from the Save The Children organization, the family's financial circumstances improved somewhat.

Subu was serious about his education and often studied in the kitchen after everyone else went to bed. He completed his high school education and, with assistance from Save The Children, was able to successfully complete the very difficult entrance exam and enroll at the Indian Institute of Technology to study metallurgical engineering. He completed his undergraduate degree in four years and then took a job as a metallurgist with Tractor Engineers Ltd, a company in Bombay (Mumbai) that made components for Caterpillar brand equipment.  He lived and worked in Bombay for five years.  Bombay is a very expensive city to live in; Subu thinks it may be one of the more expensive cities in the entire world. He remembers that his life in Bombay did not involve much activity that required financial wherewithal, but instead consisted of working and then, after work, engaging in his two passions, cooking and reading.  He consistently set aside some of his salary to send home to his mother and also made regular contributions to the Save the Children organization.

He wanted to further his education beyond an undergraduate degree, but it was just too expensive to do so in Bombay.  He thus began exploring educational options in other countries including Singapore, Hong Kong, Canada, and the United States and was ultimately accepted into a material sciences doctoral program at the University of Tennessee.  He enrolled there in 2000 and obtained his material sciences PhD in 2004. During this same time period, he met and married Jyoti Agrawal, who was in the process of obtaining her PhD in chemical engineering.

Upon completing their PhDs, the couple and their new son (born in 2005) moved to Arizona where Subu took a job with Intel Corporation and Jyoti took a job with Wolfram Mathematica, a scientific software company.  It was at Intel that Subu started to develop a keen interest in

environmental issues. Some of the environmental projects he worked on at Intel included developing a lead-free soldering process and attempting to make Intel compliant with the Stockholm Convention, a treaty to reduce the proliferation of persistent organic pollutants.

As his interest in environmental issues grew, Subu became convinced that the best way to scientifically pursue these interests was to start a business. Thus, in 2011, he and Jyoti founded a business they called "Science Tomorrow". Some of the projects they worked on at Science Tomorrow included the continuing development of lead-free soldering methods, developing methods to detect defects in composite airplane components, developing silicone carbide composites for use in airplane turbines, and developing new semiconductor-based sensors for use in scanning electron microscopes (SEMs). The couple relocated Science Tomorrow to Kentucky in 2013 because of research opportunities offered by the state. Also in 2013, Both Subu and Jyoti proudly became American citizens. On the surface, all seemed well with Subu and his family.

However, strife developed between Subu and Jyoti regarding the operation of Science Tomorrow. Their differences became irreconcilable and in August of 2014, Jyoti fired Subu from his position at Science Tomorrow (she was the majority owner), the couple separated, and contentious divorce proceedings began. The family court litigation drug on and the couple was not finally divorced until October of 2016.

After he was fired from Science Tomorrow, Subu started his own business, but without Jyoti and suffering from the emotional trauma of their sudden breakup, he had less success in obtaining work. Although he submitted proposals for several environmental-related research projects he was unable to secure the work. In hindsight, Subu believes he was going through a "mid-life crisis." Finally, he applied for and was awarded a grant to develop methods of removing from soil a dangerous class of pollutants called per- and polyfluoroalkyl substances (PFAS).

4

Although he devoted a lot of work and resources to the PFAS project, as a result of the governments' investigation, it was determined that he obtained the grant under false pretenses, and his work on the project was discontinued.  And, the investigation also revealed that Jyoti and Subu had obtained the SEM grant under false pretenses. The indictment in this case followed.

Subu Nayak is now 49 years old. His life to date has been devoted to research and work. His work on the above-described projects, and on many other projects, has been good and valuable. He didn't make a lot of money working on these projects but only sometimes took a monthly salary which was lower than the monthly salary he made at Intel. He has a criminal history score of zero and, as described by some of his friends who have taken the time to write emails on his behalf (attached as exhibit A) he has a number of admirable personal qualities.

But somewhere along his life's path, he lost the way. In his zeal to obtain worthwhile research opportunities, he became overzealous and took unlawful shortcuts in the grant application process. He fully accepts responsibility for his failings and stands before the Court to accept the appropriate punishment.  He humbly asks that when formulating an appropriate sentence, the Court take into account the good work he has done in his life, prior to the unfortunate actions that resulted in the present charges.

After Subu puts this case behind him, he absolutely intends to find a way to meaningfully contribute to society.  He has a number of ideas.  He is interested in regenerative agro forestry and permaculture which are processes that can minimize the carbon impact of agricultural practices. He is currently studying in an online MBT program in the field of sustainability.  He remains interested in finding ways to eradicate the PFAS category of pollutants.  And, his thoughts often return to his native India. The last time he returned for a visit in Cuttack, he was struck by how the city had become much less lushly green and much more of a "concrete jungle".  He is

contemplating work that he could do to help and encourage young people in Cuttack and nearby locales, especially economically disadvantaged young people,  to further their education and concentrate their studies in the area of environmental issues.  He feels a great need to impress upon the younger generations the ideas of self-reliance and sustainability.

The recommended offense level for Subu is 14.  At his criminal history category of I, Subu's sentencing range is only one level away from Zone C in the sentencing table.  For sentencing ranges that fall within Zone C, the Guideline Manual allows for a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for one half of the minimum term of imprisonment.  U.S.S.G. § 5C1.1 (d).  It is respectfully requested that, based on Subu's history and characteristics, the Court consider a one level downward variance and impose a Zone C sentence that substitutes home detention for one half of the minimum term of imprisonment.  Additionally, the undersigned respectfully requests that for any term of imprisonment imposed, the Court recommend incarceration at the facility closest to his home in Lexington, Kentucky. Lastly, because Subu has remained on bond without incident for nearly one year, it is requested that he be allowed to self-surrender for the service of any sentence the Court might impose.

Respectfully submitted,

/s/ PATRICK F. NASH
NASH · MARSHALL, PLLC
129 West Short Street
Lexington, Kentucky 40507
Telephone: (859) 254-3232
Fax: (859) 225-4746
E-mail: pfnash@nashmarshall.com
ATTORNEY FOR DEFENDANT
SUBHADARSHI NAYAK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this matter or service was completed by first class mail to any non-CM/ECF participants.

<u>/s/ PATRICK F. NASH</u>
ATTORNEY FOR DEFENDANT
SUBHADARSHI NAYAK